UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K<small>ARAN</small> M. W<small>RIGHT</small>,

        Plaintiff,                        Hon. Paul L. Maloney

v.                                       Case No. 1:14-cv-212-PLM-PJG

C<small>OMMISSIONER OF</small> S<small>OCIAL</small> S<small>ECURITY</small>,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 USC §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. On December 10, 2012, plaintiff filed her application for SSI benefits, and on December 18, 2012, she filed her application for DIB, alleging for each a February 16, 2011, onset of disability.[1] (Page ID 188-94, 195-203). Her claims were denied on initial review. (Page ID 83-97, 98-112).

On October 2, 2013, she received a hearing before an administrative law judge (ALJ). (Page 44-81). Although informed of her right to representation, plaintiff chose

---

[1] There is some evidence in the record suggesting that plaintiff had asserted a 2010 onset of disability. (Page ID 28, 30, 59). Plaintiff informed the Court, however, both in her opening brief and during oral argument, that she is asserting a February 16, 2011, onset of disability. (Pltf. Brief at 2, Page ID 708). She alleges that her onset of disability occurred when she suffered a tri-malleolar fracture of her right ankle on February 16, 2011. (*Id.*). Accordingly, the Court will use that date as the alleged onset of disability.

to appear and testify without the assistance of an attorney or other representative. (Page ID 161).

On November 14, 2013, the ALJ sent plaintiff a notice of intent to include additional medical evidence, and he advised plaintiff of her rights regarding the supplementation of the record. (Page ID 309-10). The ALJ advised plaintiff that, if she did not respond within ten days of the receipt of the notice, he would assume that plaintiff did not intend to exercise any of her rights, and that he would enter the additional evidence into the record. (Page ID 310). Having not heard from plaintiff within the time allowed, the ALJ determined that the record evidence was sufficiently developed to make a decision concerning plaintiff's disability claims. (ALJ Op. at 1, Page ID 28).

On December 13, 2013, the ALJ issued a decision finding that plaintiff was not disabled. (*Id.*, Page ID 28-39). On January 23, 2014, the Appeals Council denied review (Page ID 21-23), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She argues, in essence, that the ALJ erred in his findings regarding plaintiff's residual function capacity, as the findings were contrary to the record evidence and not supported by substantial evidence.

I conducted oral arguments on January 26, 2015. Having reviewed the record, and having considered the parties' written and oral submissions, I recommend that the Commissioner's decision be affirmed.

## **Legal Standard**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73.

"If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854-55 (6th Cir. 2010).

A claimant must prove that she suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying this standard, the Commissioner has developed a five-step sequential analysis. *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis,

> [t]he claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the

impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

A claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past work through step four. *Jones v. Commissioner*, 336 F.3d 469, 474 (6th Cir. 2003). At step five of the inquiry, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual function capacity (determined at step four) and vocational profile." *Id.*

### The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. (ALJ Op. at 3, Page ID 30). He also found that plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of disability. (*Id.*). Plaintiff had the following severe impairments: "fracture/dislocation of the right ankle status post open reduction internal fixation (ORIF) of right ankle; chronic obstructive pulmonary disease (COPD); essential hypertension; depression; mood disorder; and amphetamine use." (*Id.*). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or

equaled the requirements of the listing of impairments. (*Id.* at 5, Page ID 32). He found that plaintiff retained a residual functional capacity (RFC):

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; occasionally climb ladders, ropes, and stairs; avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation; able to perform simple routine, two-step tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes.

(*Id.* at 6-7, Page ID 33-34).

In defining plaintiff's RFC, the ALJ found that plaintiff's medically-determinable impairments could be expected to cause the symptoms described by plaintiff, but he found plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms "were not entirely credible." (*Id.* at 7, Page ID 34).

Based on the RFC, the ALJ determined that plaintiff's impairments do not prevent her from performing her past relevant work as a cashier, but that they do prevent her from performing her past relevant work as a customer service clerk. (*Id.* at 11, Page ID 38). The ALJ relied on the testimony of the vocational expert (VE) in making the finding that plaintiff is able to perform work as a cashier. (*Id.* at 12, Page ID 39). Accordingly, the ALJ determined that plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged disability onset date through the date of his decision. (*Id.*).

**Discussion**

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of h[is] symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990).

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be rejected completely; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188

(SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006). While the ALJ must consider these factors, he is not required to discuss each of them. *See Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011); *Mayfield v. Commissioner*, No. 1:12-cv-912, 2014 WL 1341923, at * 1 (W.D. Mich. Mar. 31, 2014) (collecting cases); *see also Hernandez v. Colvin*, 567 F. App'x 576, 584 (10th Cir. May 28, 2014) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

Claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart*, 710 F.3d at 376.

### 1.

In challenging the ALJ's decision, plaintiff argues that he gave insufficient weight to the opinions of a State agency consultative examiner, Daniel Walberer, Ed.D. (Pltf. Brief at 5-6, Page ID 711-12). On April 25, 2013, Dr. Walberer conducted a psychological evaluation of plaintiff, and he diagnosed mood disorder, NOS, and amphetamine use, NOS. (Page ID 645). He assigned plaintiff a GAF score of 55, and he described her prognosis as "guarded," noting:

> Her ability to understand and remember typical work related instructions would be moderately impaired by her emotional issues. She would seem to have mild impairment with concentration and persistence. Her ability to interact with other[s] may be moderately impaired. Her ability to adapt to work place changes would be mildly impaired. She would benefit from counseling to address her emotional issues.

(Page ID 645).

The ALJ gave Dr. Walberer's opinion "partial weight." (ALJ Op. at 10, Page ID 37).[2] In doing so, the ALJ noted inconsistencies between the doctor's opinion that plaintiff's ability to interact with others "may be moderately impaired" and the doctor's own examination notes. (*Id.* (referring to Page ID 642-47)).

The ALJ's decision in this regard is supported by substantial evidence. For example, according to Dr. Walberer's notes: "[Plaintiff] admitted [s]he got along with people, in general. She also noted a fair relationship with family. She noted few friends. She felt she got along well with past co-workers. She seemed to get along with the staff in my office." (Page ID 643). Plaintiff stated that "[s]he felt she could work

---

[2]Plaintiff complains that the ALJ's opinion is "confusing" as to whether he gave "great weight" to the opinions of Dr. Walberer or the State agency physical consultative examiner (referring to Robert Jamieson, D.O. of Great Lakes Medical Evaluation). (Pltf. Brief at 6, Page ID 712). While it is not a model of clarity in this regard, a fair reading of the opinion leads to the inescapable conclusion that the ALJ gave "partial weight" to the opinions of Dr. Walberer (*see* ALJ Op. at 10, Page ID 37), and that he gave "great weight" to the opinions of the State agency reviewing consultants, George Starrett, Ed.D., and Saadat Abbasi, M.D., the latter of whose opinions were informed by the findings of Dr. Jamieson. (*See* Page ID 99). The ALJ explicitly noted that he was giving "Dr. Abbasi's opinion great weight" (ALJ Op. at 10, Page ID 37), and the only other instance in which the ALJ notes that he is giving a medical opinion "great weight" is at the conclusion of his analysis of "the State agency's assessment of [plaintiff's] psychological impairments." (*Id.* at 10-11, Page ID 37-38). Dr. Starrett served as the State agency psychological consultant. (*See* Page ID 98-110).

if she [could] find a driving job." (Page ID 645). Dr. Walberer's notes further indicate that plaintiff "presented on time and had no problem in finding the location of [his] office," and that she "demonstrated good manners throughout the session." (Page ID 643). Dr. Walberer opined that plaintiff would be able to manage her benefits. (Page ID 645).

The ALJ properly considered the lack of consistency between Dr. Walberer's opinion and his examination notes. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). In addition, because Dr. Walberer was not a treating physician, his opinion is not entitled to any particular deference. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Moreover, the ALJ had another evaluation by a State agency psychological consultant, George Starrett, Ed.D., upon which to base his decision. (Page ID 98-110). Having reviewed the medical evidence, including Dr. Walberer's opinion, Dr. Starrett opined that plaintiff had no limitations concerning social interactions. (Page ID 99, 110). The ALJ gave this opinion "great weight," noting the "consultant's opinion [is] based on his expertise and knowledge of the Social Security Administration's rules and regulations of the disability program." (ALJ Op. at 11, Page ID 38). The ALJ acted within his discretion in discounting parts of Dr. Walberer's opinion in favor of Dr. Starrett's. *See Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *see also* 20 C.F.R. § 404.1527(e)(2) (ALJs "must consider findings and other opinions of State agency . . . psychological consultants . . ., except for the ultimate determination of [disability]," as they are "highly qualified . . . psychologists . . . who are also experts in Social Security disability evaluation."); 20 C.F.R. § 416.927(e)(2) (same).

Plaintiff seeks to bolster Dr. Walberer's opinion with those of Merry Battles, who plaintiff places in the category of a "treating physician." (Pltf. Brief at 6, Page ID 712). But plaintiff cites to no opinion purportedly expressed by Ms. Battles, stating only that Dr. Walberer's opinion "is in line with the opinions of . . . Merry Battles." (*See id.* (citing, without explanation, to 35 pages of Ms. Battles' counseling notes)). "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also McPherson*, 125 F.3d at 995-96 ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoted citation omitted)).[3]

Moreover, Ms. Battles is a social worker, not a treating physician. (*See* Page ID 689). The treating physician rule does not apply to Ms. Battles, even if she had expressed an opinion. Social workers are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). There is no "treating social worker" rule. The opinion of a social worker is not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06-03p (reprinted at 2006 WL

---

[3]The same is true regarding plaintiff's cryptic reference to "progress notes" from "Interact of Michigan." (*See* Pltf. Brief at 6, Page ID 712).

2329939, at *2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'").

The opinions of social workers fall within the category of information provided by "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require only that information from "other sources" be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v, Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). This is not a demanding standard, and it was easily met here. The ALJ cited to the records relating to counseling Merry Battles provided plaintiff, noting that plaintiff had been dropped from counseling services on April 26, 2012, due to lack of attendance. (ALJ Op. at 10, Page ID 37 (citing to Exhibit 13F, Page ID 658-93)).[4]

Plaintiff also seeks to bolster Dr. Walberer's opinion with a July 11, 2012, report from the Kalamazoo Community Mental Health and Substance Abuse Service. (Pltf. Brief at 6, Page ID 712 (referring to Page ID 623-34). The author of this report appears to be a therapist, Krysteen Veenhuis. (Page ID 634). While the report is also signed by a psychiatrist, Gopal Bedi, M.D. (*see id.*), the report references a single author who is a therapist. (*See* Page ID 624 ("[Plaintiff] met with this author and *another*

---

[4]According to these records, Merry Battles sent a letter, dated October 12, 2011, informing plaintiff that her file would be closed "within 14 days . . . due to lack of attendance." (Page ID 659). The records also include a notice, dated April 26, 2012, and signed by Merry Battles, terminating counseling services due to plaintiff's "lack of participation." (Page ID 658).

therapist. . . ." (emphasis supplied)). As with a social worker, a therapist is not an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a), (d); § 416.713(a), (d). There is no "treating therapist rule"; accordingly, the opinion of a therapist is not entitled to any particular weight. *See Engelbrecht v. Commissioner*, 572 F. App'x 392, 397-98 (6th Cir. 2014); *Matelske v. Commissioner*, No. 1:12-cv-93, 2013 WL 4520202, at *13 (W.D. Mich. Aug. 26, 2013).

Moreover, there is nothing in the report to indicate that either Ms. Veenhuis or Dr. Gopal conducted any diagnostic test or objective examination to determine the nature or severity of plaintiff's impairments. Instead, the "Functional Information" in the report simply recites plaintiff's subjective complaints. (*See* Page ID 631-32). As such, the functional information, even to the extent it can be attributed to Dr. Gopal, is not entitled to any particular deference. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis*, 414 F. App'x at 804 (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Finally, plaintiff complains that the ALJ essentially disregarded medical records relating to two medical appointments she had with Karimah Joseph, M.D., on August 21, 2013, and September 12, 2013, respectively. (Pltf. Brief at 6-7, Page ID 712-13). A review of these records reveals nothing inconsistent with the ALJ's findings. Dr. Joseph diagnosed hearing loss, hypertension, asthma, COPD, arthritis, backache, headache syndromes, and depression. (Page ID 654). The ALJ's findings regarding plaintiff's "severe impairments" include those of Dr. Joseph's diagnoses that

are relevant to her claim of disability. (*See* ALJ Op. at 3, Page ID 30 ("severe impairments" include COPD, hypertension, and depression)). The ALJ considered Dr. Joseph's notes in determining that none of plaintiff's impairments met or equals the severity of a listed impairment. (*See id.* at 5, Page ID 32).

Dr. Joseph's diagnostic testing was limited to taking plaintiff's vital signs, and performing blood tests (within expected ranges) and an oxygen saturation study (97 percent). (Page ID 655-56). The doctor did not offer an opinion regarding plaintiff's functional limitations. Her plan of treatment for her hypertension, COPD, and depression was limited to prescribing medication and consulting with a specialist in psychiatry. (Page ID 656, 657). Accordingly, even if the ALJ gave "controlling weight" to Dr. Joseph's opinions, it would not alter the outcome here.

**2.**

Plaintiff argues that, given her "26 years of good and consistent work history," it was unfair for the ALJ to have discounted her credibility. (Pltf. Brief at 9, Page ID 715). The ALJ found plaintiff's statements regarding "the intensity, persistence and limiting effects" of her symptoms "not entirely credible." (ALJ Op. at 7, Page ID 34). There is substantial evidence to support this conclusion.

With respect to plaintiff's physical impairments – ankle injuries and COPD – there is significant medical evidence indicating that they are not as severe as plaintiff contends. For example, while she has "limited range of motion" in her right ankle, she does not use a cane or other assistive device for ambulation; her gait is normal; and she acknowledged that her pain comes and goes. (Page ID 637). Dr. Abbasi, the State

agency physical consultative evaluator, considered this evidence in formulating his opinions regarding plaintiff's exertional and postural limitations. (Page ID 104, 108-09). The ALJ gave Dr. Abbasi's opinion "great weight" due to its consistency with plaintiff's testimony regarding her pain and the medical evidence. (ALJ Op. at 10, Page ID 37).

Similarly, with respect to the psychological impairments, the evidence indicates a level of severity significantly less than plaintiff claims. In her self-evaluation, for example, plaintiff acknowledged being able to prepare meals, shop, manage money, drive, and visit her sister. (Page ID 282-84). She did not note any limitations regarding memory, understanding, following instructions, or getting along with others. (Page ID 285). Also, as noted above, plaintiff admitted to Dr. Walberer that she got along with people, in general; she had a fair relationship with her family; she had some friends; and she got along well with past co-workers. (Page ID 643). Dr. Walberer noted that plaintiff "presented on time and had no problem in finding the location of [his] office," and that she "demonstrated good manners throughout the session." (Page ID 643). Moreover, plaintiff noted that "[s]he felt she could work if she [could] find a driving job." (Page ID 645). This and other medical evidence was considered by Dr. Starrett, the State agency psychological consultative evaluator in reaching his conclusion that plaintiff is "capable of understanding, remembering and following simple directions within the parameters of any imposed physical restrictions." (Page ID 110).

Plaintiff's reliance on *Felisky v. Bowen*, 35 F.3d 1027, 1036-41 (6th Cir. 1994), is misplaced. While the court in that case noted Felisky's work history as one of the factors supporting her credibility, *see id.* at 1041, it did not adopt a presumption of credibility based on that factor. "The Sixth Circuit has never held that a social security benefits claimant is entitled to a 'presumption of credibility.' It is the ALJ's function to determine credibility issues, and the claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination." *Barney v. Commissioner*, No. 1:08-cv-1225, 2010 WL 1027877, at *4 (W.D. Mich. Jan. 20, 2010) (citing *White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987); 20 C.F.R. § 404.1529), *report and recommendation adopted*, 2010 WL 1027867 (W.D. Mich. Mar. 18, 2010).

The ALJ "considered all symptoms" and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and "other evidence," such as plaintiff's work history. (ALJ Op. at 7, Page ID 34 (citing 20 C.F.R. §§ 404.1529, 416.929)). Credibility determinations fall within the province of the ALJ. *See, e.g., Sullivan v. Commissioner*, No. 14-5337, __ F. App'x __, 2014 WL 6997487, at *5 (6th Cir. Dec. 12, 2014); *Reynolds v. Commissioner*, 424 F. App'x 411, 416-17 (6th Cir. 2011). "The ALJ's credibility determinations – when supported by substantial evidence – are entitled to 'great weight.'" *Steagall v. Commissioner*, No. 14-3370, __ F. App'x __, 2015 WL 64654, *3 (6th Cir. Jan. 6, 2015) (quoting *Cruse*, 502 F.3d at 542). As noted above, there is substantial evidence supporting the ALJ's credibility determination, despite plaintiff's work history.

In sum, there is substantial evidence to support the ALJ's assessment of plaintiff's RFC. Plaintiff has failed to meet her burden of proving the existence and severity of limitations caused by her impairments as would preclude her from performing her past work as a cashier. *See Jones*, 336 F.3d at 474. Accordingly, the ALJ's decision to deny disability benefits to plaintiff should be upheld.

## Conclusion

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Respectfully submitted,

Date: February 3, 2015   /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).